IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ARLENE GALDAMEZ,
         Plaintiff,

                                      CV. 00-1768-PK

                                      OPINION AND ORDER

v.


JOHN POTTER,
         Defendant.

PAPAK, Magistrate Judge:

      This matter comes before the court on plaintiff's Application for Attorney Fees Expenses and Costs [#194]. For the reasons set forth below, plaintiff is awarded attorney fees in the amount of $488,077.00, and costs in the amount of $26,190.04.

## BACKGROUND

      Plaintiff Arlene Galdamez ("Galdamez") was the postmaster in Willamina, Oregon beginning in 1993. After being placed on administrative leave in late 1997, she filed suit in

Page 1 - OPINION AND ORDER

district court alleging race, color, and/or national origin discrimination in violation of Title VII. The case proceeded to trial and the jury returned a verdict in favor of the defendant Postal Service. On appeal, the Court of Appeals for the Ninth Circuit sustained the jury verdict but held that the district court erred in failing to instruct the jurors "that the Postal Service could be liable for actionable harassment by third parties if it failed to take reasonable steps within its power to address the problem," *Galdamez v. Potter,* 415 F.3d 1015, 1025 (9th Cir. 2005), and remanded for a new trial on that claim.

Following a second trial in May 2006, the jury returned a verdict in favor of Galdamez in the amount of $250,000 upon a finding that the Postal Service knew or should have known that Galdamez was subjected to a hostile work environment by customers and other Willamina residents based on her race or national origin, and failed to take prompt, effective remedial action reasonably calculated to end it.

Galdamez now seeks attorney fees related to work on the first trial, appeal and second trial in the amount of $608,329[1] and costs in the amount of $27,052.87. The Postal Service concedes that Galdamez is the prevailing party and entitled to an award of fees and costs, but argues that the fee request is unreasonable and should be reduced for a variety of reasons including lack of success at the first trial and on appeal, and inefficiency of trial counsel.

## DISCUSSION

---

[1] Plaintiff has voluntarily excluded from her fee request 25 hours of attorney time at $250 per hour and 35.6 hours of attorney time at $300 per hour, for a total reduction of $16,930, for time spent developing the Oakridge, Oregon postmaster as a disparate treatment comparator at the first trial.

Page 2 - OPINION AND ORDER

**I.      Attorney Fees**

A determination of a reasonable attorney's fee begins with the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563-64 (1986). Plaintiff carries the burden of proving the lodestar. *Id.* The factors considered to determine and evaluate the lodestar figure include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild,*, 70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951 (1976). Only those factors which are applicable need be addressed. *Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069, 1073 (9th Cir. 1983).

The court may adjust the lodestar: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *Hensley v. Eckerhart,* 461 U.S. 424, 435-36 (1983); or (2) upward in "rare" and "exceptional" cases. *Delaware*, 478 U.S. at 565. However there is a presumption that the lodestar figure represents a reasonable fee. *Miller v. Los Angeles County Bd. of Educ.,* 827 F.2d 617, 621 (9th Cir. 1987). Here defendant contends that plaintiff's attorney fee request should be reduced because of plaintiff's limited success at the first trial and on appeal, and because plaintiff has included hours not reasonably expended on the litigation.

Page 3 - OPINION AND ORDER

### A. Limited Success at First Trial and on Appeal

Defendant argues that plaintiff sought relief on two separate bases, one successful and one unsuccessful, and that the court should not award fees for the unsuccessful claim. Plaintiff replies that both claims involve related legal theories and/or arise from a common core of facts and, thus, that she is entitled to a fee unreduced by hours spent on the unsuccessful claim.

While the starting point for the evaluation of a fee request is the determination of the lodestar, "the district court has discretion to make a downward adjustment to the components or the product of this initial equation . . . for the 'results obtained' in the litigation, which is a 'particularly crucial [factor] where a plaintiff is deemed 'prevailing' even though [she] succeeded on only some of [her] claims for relief." *Schwarz v. Sec'y of Health & Human Serv.,* 73 F.3d 895, 901 (9th Cir. 1995), quoting *Hensley,* 461 U.S. at 434.

In the wake of *Hensley*, district courts in this circuit have been instructed to follow a two-part analysis in those cases in which a plaintiff's success is limited:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive.

*Schwarz,* 73 F.3d at 901-02.

While both of plaintiff's claims arose out of her employment with the Postal Service, I

Page 4 - OPINION AND ORDER

conclude, after a thorough review of the entire record, including both trial transcripts,[2] that plaintiff's claims were based on different facts **and** different legal theories and that much of the attorneys' work on the failed claim was unrelated to the claim that proved to be meritorious. While the "test for relatedness of claims is not precise," *Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir. 1986), the focus is on whether the relief sought on the unsuccessful claim "is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Id.*, quoting *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir. 1983). Here, plaintiff's two claims for relief were directed towards different conduct by the Postal Service and were based on distinct legal theories.

Plaintiff's unsuccessful claim alleged intentional discrimination by the Postal Service in disparate treatment as compared to a white postmaster, Janet Batchelor, who similarly upset a small Oregon town with her strict enforcement of postal rules. In her successful claim, plaintiff alleged that the Postal Service was negligent in failing to take prompt and effective remedial action reasonably calculated to end a hostile work environment based on race or national origin that was caused by customers of the Willamina post office and other residents of that town. I believe the legal theories advanced by plaintiff and the facts relied upon to support those theories were, in large part, separate and distinct and support a reduction in plaintiff's fee request. *See Schwarz v. Sec'y of Health & Welfare,* 73 F.3d 895 (9th Cir. 1995) (plaintiff's successful claim on glass ceiling portion of sex discrimination claim unrelated to other sex and race discrimination

---

[2]This case was initially assigned to Magistrate Judge John Jelderks. With consent of the parties, he presided at the first trial. Following remand from the court of appeals, the case was reassigned to the undersigned, who presided at the second trial.

Page 5 - OPINION AND ORDER

claims).

Having found that plaintiff's claims were unrelated, I will reduce her fee request as to the first trial and the appeal by forty percent. In doing so, I am mindful of *Hensley*'s requirement that the court "provide a concise but clear explanation of its reasons for the fee award." *Hensley,* 461 U.S. at 437. However, the Ninth Circuit has instructed that *Hensley*'s requirement obliges the court "to give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review." *Gates v. Deukmejian,* 987 F.2d 1392, 1398 (9th Cir. 1992). The court is not "required to set forth an hour-by-hour analysis of the fee request[,] ... [and] when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Id.* at 1399 (internal quotations omitted).

After reviewing the record, I conclude that forty percent of counsels' time and work connected with the first trial and appeal[3] was related to the unsuccessful claim, forty percent was related to the successful claim, and twenty percent was performed in connection with both claims and, thus, aided in the ultimate success of the one claim.[4] I thus reduce Plaintiff's fee request related to the first trial and the appeal by forty percent and award fees in the amount of

---

[3]On appeal, plaintiff raised five assignments of error and succeeded on one.

[4]In a series of cases, the Ninth Circuit has expanded the analysis of whether claims are related or unrelated as discussed above, suggesting that plaintiffs are to be compensated for attorney fees incurred in connection with unrelated and unsuccessful claims if they contribute to the ultimate victory in the lawsuit. *See Herrington v. County of Sonoma,* 883 F.2d 739, 747 (9th Cir. 1989); *Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1052 (9th Cir. 1991).

Page 6 - OPINION AND ORDER

$488,077.[5]

Since I have found that the claim upon which plaintiff was successful and the claim upon which she was unsuccessful were unrelated, and thus reduced her attorney fee request accordingly, I do not have to evaluate the significance of the relief afforded plaintiff in relation to the hours reasonably expended on the litigation. I note, however, that if required to conduct that analysis, I would reach the same result. While Plaintiff certainly received a good result at the second trial, only partial or limited success was obtained. The verdict in favor of plaintiff was considerably less than the verdict she likely would have obtained had she also succeeded on her disparate treatment claim at the first trial.[6] *See, e.g., Avila v. Coca-Cola Co.,* 849 F.2d 511, 514 (11th Cir. 1988) (district court did not abuse discretion in reducing fee award where relief plaintiff obtained on retaliation claim was of different nature and considerably less than relief he would have obtained if successful on national origins claim).

In awarding fees to plaintiff in nearly twice the amount of the verdict, I have, in addition to the matters discussed above, considered the following factors: (1) this was a very difficult case and the second trial presented a novel issue; (2) plaintiff's counsel are experienced and able, and charged at a rate that is consistent with other plaintiff employment lawyers in the Portland metropolitan area; and (3) hostile work environment cases are often deemed undesirable by the plaintiffs bar.

---

[5]I calculate that plaintiff's attorneys recorded 1,221.1 hours in connection with the first trial and appeal, which includes 60.6 hours not included in the fee petition. If billed at the rates listed in plaintiff's Application, the result would be a fee bill of $345,730. It is that figure I have reduced by forty percent.

[6]Plaintiff's ultimate recovery for non-economic damages under Title VII is capped at $300,000.

Page 7 - OPINION AND ORDER

### B. Hours Expended on the Litigation

Defendant claims that plaintiff's initial lodestar calculation is not reasonable because hours expended include counsel's inefficiency at the first trial, and the use of two counsel and the inefficiency resulting from substitution of a different counsel at the second trial. Normally, determination of the lodestar is the starting point for the evaluation of a fee request. Here, however, where I have reduced plaintiff's fee request to reflect limited success, I consider defendant's arguments as to the reasonableness of the lodestar calculation, to the extent I agree with them, as independent support for that conclusion. In any event, I believe that the reduction in fees discussed above in large part mitigates any inefficiencies identified by defendant. Therefore, I will not further reduce plaintiff's fee request.

## II. Costs

Plaintiff claims costs in the amount $27,052.87. Defendant objects to only $3,071.33 of that request as reimbursement for depositions of several individuals who were either not witnesses at trial or for whom the depositions were only for discovery or investigative purposes and not for trial preparation. Plaintiff concedes defendant's objections to depositions and trial appearance fees totaling $862.83, but correctly points out that as to the remaining depositions, the deponents either testified at trial and were questioned concerning their deposition responses or the deposition transcript was read into evidence during trial. I thus award plaintiff costs in the amount of $26,190.04.

///

///

///

Page 8 - OPINION AND ORDER

**CONCLUSION**

Based on the foregoing, plaintiff is awarded attorney fees in the amount of $488,077 and costs in the amount of $26,190.04.


Dated this 15th of March, 2007.


    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge